O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE 1, an individual<br><br>                Plaintiff,<br><br>   v.<br><br>MANHATTAN BEACH UNIFIED<br>SCHOOL DISTRICT; TYLER GORDON;<br>BEN DALE; and DOES 2-10, inclusive,<br><br>             Defendants. | Case No.  19-cv-6962 DDP (RAOx)<br><br>**ORDER GRANTING IN PART,<br>DENYING IN PART, DEFENDANT<br>MANHATTAN BEACH UNIFIED<br>SCHOOL DISTRICT AND BEN<br>DALE'S MOTIONS TO DISMISS<br>PORTIONS OF PLAINTIFF'S FIRST<br>AMENDED COMPLAINT**<br><br>[Dkts. 27, 28] |

Presently before the court are Defendant Manhattan Beach Unified School District's and Defendant Ben Dale's Motions to Dismiss portions of the First Amended Complaint.  (Dkts. 27, 28.)  Having considered the submissions of the parties and heard oral argument, the court adopts the following order.

///

///

1

**I. BACKGROUND**

2

Plaintiff Jane Doe ("Plaintiff") was a student at Mira Costa High School during the

3

2017-2019 school years.  (Dkt. 22, First Amended Complaint ("FAC") ¶¶ 12, 17.)  Mira

4

Costa High School ("Mira Costa High") is a school within the Defendant Manhattan

5

Beach Unified School District (collectively, "School District").  (*Id.* ¶ 13.)  Defendant Ben

6

Dale ("Principal Dale") was the principal of Mira Costa High School during the 2017-

7

2019 school years.  (*Id.* ¶ 13.)  Defendant Tyler Gordon ("Gordon") "was a star wrestler

8

for Mira Costa [High]."  (*Id.* ¶ 2.)

9

Plaintiff alleges that Gordon raped Plaintiff on or about February 20, 2018.  (*Id.* ¶

10

3.)  After the rape, Gordon "approached [Plaintiff] on campus at Mira Costa [High] and

11

threatened her with legal action if she were to tell anyone what happened."  (*Id.* ¶ 18.)

12

Gordon's "twin brother also attempted to approach [Plaintiff] on the Mira Costa High

13

School campus . . .[and] sent an aggressive message to [Plaintiff's] best friend via social

14

media."  (*Id.*)  "On or about July 14, 2018, [Plaintiff] went to the Manhattan Beach Police

15

Department . . . and filed a police report." (*Id.* ¶ 22.)  During the week of July 22, Plaintiff

16

and her mother contacted Mira Costa High to report the rape to Principal Dale, however,

17

Plaintiff's mother "was only able to relay the information to his assistant . . . ."  (*Id.* ¶¶ 23-

18

25.)  Plaintiff's mother "requested to have a meeting with [Principal Dale] to discuss how

19

the school would keep [Plaintiff] safe on campus during her senior year."  (*Id.* ¶ 25.)

20

Days later, Principal Dale's assistant contacted Plaintiff's mother and informed her that

21

Assistant Principal Stephanie Hall ("Ms. Hall") would handle "the matter."  (*Id.* ¶¶ 27-

22

29.)  Ms. Hall was also the Director of Student Athletics; as such, Plaintiff's "parents

23

expressed concern about Ms. Hall's role in overseeing Student Athletics" and her

24

potential bias.  (*Id.* ¶ 29.)  "Ms. Hall assured [Plaintiff's] parents that she was in charge of

25

student safety . . . [and] agreed to ensure that [Plaintiff's and Gordon's] schedules would

26

be such that they would not cross paths."  (*Id.*)

27

28

2

Despite Ms. Hall's assurance that Plaintiff's schedule would not require her to cross paths with Gordon, Plaintiff alleges that the School District gave her a class schedule that "required her to see her rapist multiple times per day." (*Id.* ¶ 31.) Gordon "was in the class before [Plaintiff's] first period class, so she saw him walking out of class every day[,] [and] [Gordon's] schedule had him walking past [Plaintiff's] second period class, so she saw him during her second period class every day." (*Id.*) As a result, Plaintiff "began missing numerous classes in the first week of school, and spending substantial time in the student counselor's office due to her nervousness and anxiety on campus." (*Id.*) Plaintiff alleges that during this time she "had severe anxiety and difficulties in attending and staying in class[,] [and] [h]er grades suffered correspondingly." (*Id.* ¶ 34.)

"On about September of 2018, . . . Plaintiff accepted a new schedule which allowed her to come later to avoid the anxiety of the earlier periods in the day, when she [was] forced to see [Gordon]." (*Id.* ¶ 37.) Although Plaintiff alleges that she "adjusted to her new schedule," Plaintiff continued to experience anxiety when going to campus "to the point where it affected her attendance and class work." (*Id.*) In late November 2018, social media posts regarding victims of rape and perpetrators on Mira Costa High School's campus began. (*Id.* ¶¶ 39-42.) Plaintiff alleges that as a result of the discussions on social media, Plaintiff was further "traumatized . . . having been forced to witness the entire school chattering about, *inter alia*, [Gordon's] sexual battery unto her person." (*Id.* ¶ 41.)

On December 4, 2018, during a meeting with Ms. Hall and other School District officials, the School District denied Plaintiff's request to take private one-on-one credits off-campus. (*Id.* ¶ 43.) The next day, Plaintiff alleges that she again suffered "emotional turmoil" after hearing that Principal Dale affirmatively stated during a parent meeting that there were no victims of rape on campus and denied knowledge of any incidents of student-on-student sexual assaults. (*Id.* ¶ 45.) The same day, Plaintiff alleges that her

3

parents met with Principal Dale for the first time.  (*Id.* ¶ 46.)  During this meeting, Principal Dale stated that "he would approve" Plaintiff's request for one-on-one private school credits.  (*Id.* ¶ 47.)  Plaintiff alleges that Principal Dale "did not keep his word, failing to advocate to the district on [Plaintiff's] behalf for an exception that would allow her to obtain required credits through one-on-one private school."  (*Id.*)

Subsequently, a School District employee took over the investigation and was to determine "whether the school district needed to take action in response."  (*Id.* ¶ 49.)  Plaintiff alleges that on December 21, 2019, during a meeting with Plaintiff, the School District employee informed Plaintiff that "there was no criminal act" and "no other victims came forward."  (*Id.* ¶ 50.)  Principal Dale informed Plaintiff that "[Gordon] was still on campus and had not faced any repercussions."  (*Id.*)  Principal Dale further informed Plaintiff that the investigation would conclude shortly and that he would "follow up with the family of [Plaintiff] once the investigation was finished."  (*Id.*)  Plaintiff alleges that she "never heard back from [Principal Dale]."  (*Id.*)  Plaintiff alleges that the School District "took no action at all to ensure [Gordon] encountered repercussions for raping [Plaintiff]."  (*Id.* ¶ 53.)  Plaintiff "was forced to stay in proximity with her rapist for nearly a year and a half, was forced to adjust her (as opposed to her rapist changing his) schedule of classes, walking paths, and options to finish school credits . . . ."  (*Id.*)  Plaintiff further alleges that she "has suffered post-traumatic stress disorder, anxiety, night terrors, and sleep paralysis due to having to relive her rape every day on campus."  (*Id.* ¶ 55.)

Based on the allegations above, Plaintiff brings this action against the School District, Principal Dale, and Gordon.  (*See* Compl.)  The School District moves to dismiss the following causes of action from the First Amended Complaint: (1) Harassment in Educational Institution under Cal. Educ. Code § 220; (2) Disparate treatment under 20 U.S.C. § 1681 *et seq.*; (3) Retaliation under 20 U.S.C. § 1681 *et seq.*; (4) Disparate impact under 20 U.S.C. § 1681 *et seq.*; (5) Discrimination in Business Establishment under Cal.

Civ. Code § 51; (6) Deprivation of Federal Rights under 42 U.S.C. § 1983; (7) Intentional Infliction of Emotional Distress; (8) Negligence/Negligence per se; and (9) Plaintiff's request for punitive damages.  (Dkt. 28, Motion to Dismiss ("School District MTD").)

Dale moves to dismiss the Sixth Cause of Action for Deprivation of Federal Rights under 42 U.S.C. § 1983; Seventh Cause of Action for Intentional Infliction of Emotional Distress; Eighth Cause of Action for Negligence/Negligence Per Se; and Plaintiff's request for punitive damages.  (Dkt. 27, Motion to Dismiss ("Dale MTD").)

The court addresses the sufficiency of Plaintiff's federal claims first, followed by the state law claims.

**II. LEGAL STANDARD**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id.* at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id.* at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at 555, 556.  "Determining whether a complaint

states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Disparate Treatment, Disparate Impact, & Retaliation

The School District argues that Plaintiff has not sufficiently alleged a claim under 20 U.S.C. § 1681 *et seq.* ("Title IX") under any theory: disparate treatment, disparate impact, or retaliation.[1]  (*Id.* at 15-21.)  Plaintiff does not dispute that her disparate impact theory under Title IX is properly subject to dismissal.  (Opp. to School District MTD at 20 n.3.)  Plaintiff argues, however, that she has sufficiently pled disparate treatment.  (*Id.* at 21-24.)  As to disparate treatment, Plaintiff argues that she has sufficiently pled (1) a selective enforcement theory; (2) an erroneous outcome theory; (3) student-on-student harassment; and (4) intentional discrimination.  (*Id.* at 21-24)

"Title IX provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 n.5 (9th Cir. 2019) (quoting 20 U.S.C. § 1681(a)).  Selective enforcement, erroneous outcome, and deliberate indifference are theories that can support a disparate treatment claim.  *See id.* at 1138-39.  "'[A selective enforcement claim] asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'"  *Id.* at 1138 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir.

---

[1] The School District also moves to strike Plaintiff's Third and Fourth causes of action as duplicative.  (School District MTD at 14-15.)  Because Plaintiff does not dispute that her Fourth cause of action based on disparate impact is subject to dismissal, the School District's request to strike the Fourth cause of action is moot.  Further, the School District does not cite to any authority to support its request to strike.  The Third cause of action is not duplicative; the Third cause of action sets forth a different theory of liability under Title IX.  The court declines to strike the Third cause of action.

1994)).  An erroneous outcome claim asserts, in essence, that the outcome of a proceeding was "flawed due to the [plaintiff's] sex."  *Id.*  Under both theories, a plaintiff must provide "nonconclusory allegations plausibly linking the disciplinary action to discrimination on the basis of sex."  *Id.*

Plaintiff does not sufficiently plead facts for selective enforcement or erroneous outcome theories.  (*See* FAC ¶¶ 66-77.)  Plaintiff's disparate treatment claim and the accompanying allegations center on student-on-student harassment.  (*Id.*)  However, selective enforcement and erroneous outcome theories may be pled with amendment.  In any amendment, Plaintiff must link, with sufficient facts, the alleged disciplinary response, or lack thereof, or the outcome of the investigation, to discrimination on the basis of sex—as opposed to the Gordon's status as a star athlete.[2]  The court grants Plaintiff leave to amend to plead facts for selective enforcement and erroneous outcome.

A student-on-student harassment claim has four requirements: (1) the school district has "substantial control over both the harasser and the context in which the known harassment occurs;" (2) plaintiff "suffers sexual harassment [ ] that is so severe, pervasive, and objectively offensive that it can be said to deprive the victim[] of access to the educational opportunities or benefits provided by the school;" (3) the school had "actual knowledge" of the harassment; and (4) the school's "deliberate indifference subjects its students to harassment."  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000) (citing *Davis v. Monroe Cty. Board of Education*, 526 U.S. 629 (1999)) (internal quotations omitted).  "Deliberate indifference occurs only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  *Id.* (internal quotations omitted).  The parties do not dispute that the

---

[2] For similar reasons, Plaintiff's intentional discrimination claim is insufficiently pled. Plaintiff's allegations center on Gordon's status as a star athlete, as opposed to discrimination on the basis of sex.

first element of a student-on-student harassment claim is sufficiently pled, therefore, the court need only discuss the sufficiency of the remaining elements.

Plaintiff alleges that she suffered student-on-student sexual harassment when Gordon "sexually assaulted, sexually battered, and raped [Plaintiff]," and "threatened [Plaintiff] with legal action if she were to report to authorities or otherwise publicize the rape." (FAC ¶ 70.)  Plaintiff also alleges that during the first week of school, despite promises from the School District to arrange Plaintiff's schedule such that she would not cross paths with Gordon, Plaintiff saw Gordon "multiple times per day."  (*Id.* ¶¶ 29, 31.) Gordon was in the class before Plaintiff's first period class, "so she saw him walking out of the class every day," and "Gordon's schedule had him walking past [Plaintiff's] second period class, so she saw him during her second period class every day."  (*Id.* ¶ 31.)  Plaintiff alleges that as a result of the School District's actions and inactions, she was "forced to stay in proximity with her rapist for nearly a year and a half, . . . and [ ] observed [the School District] continuously blatantly refuse to take any action to address [Gordon's] rape for the months after initially notifying the principal's office."  (*Id.* ¶ 53.) Further, Plaintiff alleges that she and her parents had multiple meetings with the School District employees informing them of the continuous proximity between Plaintiff and Gordon and seeking a remedy.  (*Id.* ¶¶ 29, 32, 35-37, 43, 46-54.)

Accepting Plaintiff's allegations as true, as the court must at this stage, the court cannot say that Plaintiff was not subjected to sexual harassment as a matter of law, as the School District argues.  Plaintiff informed the School District that Gordon raped her and sought a class schedule that would not require her to see her attacker.  The School District gave Plaintiff and Gordon schedules that required Plaintiff to encounter Gordon multiple times per day for a year and a half.  Plaintiff and her parents had multiple meetings with the School District informing it that her class schedule required her to see Gordon.  Although it appears that the School District changed Plaintiff's schedule at least once, the allegations are that this change of schedule did not remedy the daily

encounters.  It is plausible that Plaintiff's daily encounters with Gordon subjected Plaintiff to sexual harassment that is severe, pervasive, and objectively offensive.  As other courts have noted, the "possibility of further encounters 'between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a [school].'"  *Kinsman v. Fla. State Univ. Bd. of Trustees*, No. 4:15CV235-MW/CAS, 2015 WL 11110848, at *4 (N.D. Fla. Aug. 12, 2015) (quoting *Kelly v. Yale Univ.*, No. CIV.A. 3:01-CV-1591, 2003 WL 1563424, at *4 (D. Conn. Mar. 26, 2003)) (collecting cases).  Plaintiff alleges that the daily encounters caused her to "suffer[ ] post-traumatic stress disorder, anxiety, night terrors, and sleep paralysis due to having to relive her rape every day on campus."  (FAC ¶ 55.)  At this stage, the factual allegations are sufficient to plead sexual harassment that is severe and that the School District had actual knowledge of the harassment.

The School District also argues that Plaintiff's allegations demonstrate that it was not deliberately indifferent.  (School District MTD at 20.)  The School District argues that the allegations demonstrate that the "District took many steps to protect Plaintiff, such as by holding numerous meetings over the phone and in-person, changing her schedule, allowing her to take off campus courses, convening her teachers to discuss her IEP, and encouraging an on-campus escort by an officer."  (*Id.* at 20:5-8.)

While some allegations may support the School District's argument that it did not act clearly unreasonably, at this stage, the court must construe the facts in the light most favorable to Plaintiff.  As a whole, the complaint sets forth a course of the action by the School District that was plausibly clearly unreasonable in light of the known circumstances.  The numerous meetings occurred because Plaintiff and her parents requested them—Plaintiff alleges, that the School District was not taking any action toward an investigation or to ensure Plaintiff did not encounter Gordon on campus. Despite the constant communication with Plaintiff and her parents, the School District continuously gave Plaintiff class schedules that required her to encounter Gordon.  The

9

School District also denied Plaintiff's request to take private classes off-campus that would have allowed Plaintiff to not encounter Gordon at all.  Accepting Plaintiff's allegations as true, the School District did not remedy the sexual harassment for a year and a half.  The allegations are sufficient at this stage to plead deliberate indifference.  It is plausible that the School District acted clearly unreasonably by failing to give Plaintiff and/or Gordon schedules that minimized their encounters and failing to investigate or respond to Plaintiff's allegations of rape.  *See Kinsman*, at *4.

Lastly, a Title IX retaliation claim requires a plaintiff to plead that (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014).  There is no dispute here that Plaintiff engaged in protected activity.  Nevertheless, Plaintiff has not alleged any adverse action taken against her because of her protected activity.  Plaintiff contends that the School District's actions of assigning the investigation to the head of Student Athletics, giving Plaintiff a schedule that forced Plaintiff to cross paths with Gordon, and Dale's alleged misrepresentation at the parent meeting are adverse actions.  (*See* Opp. to School District's MTD at 24:14-27.)  However, Plaintiff fails to articulate how these actions were adverse and how these actions were casually connected to her protected activity.  *Ollier*, 768 F.3d at 868 ("the adverse action element is present when a reasonable person would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable person from making or supporting a charge of discrimination." (internal quotations and citations omitted)).

In conclusion, Plaintiff has not plausibly alleged a disparate treatment under a selective enforcement or erroneous outcome theory and has not sufficiently pled intentional discrimination or retaliation.  The court grants Plaintiff leave to amend the second and third causes of action.  Because Plaintiff does not dispute that her disparate

impact cause of action is subject to dismissal, the court dismisses Plaintiff's fourth cause of action with prejudice.

### B. Deprivation of Federal Rights – 42 U.S.C. § 1983

Principal Dale challenges the sufficiency of Plaintiff's § 1983 claim. As currently pled, the court is unable to discern any basis or theory for Plaintiff's § 1983 claim against Principal Dale. The court is unable to discern the constitutional right she alleges to have been deprived of, or the specific conduct that deprived her of such right. The court dismisses Plaintiff's sixth cause of action without prejudice and grants Plaintiff leave to amend. In any amendment, Plaintiff must clearly articulate the basis for a § 1983 claim.

Plaintiff also asserts her sixth cause of action under 42 U.S.C. § 1983 against the School District. (*See* FAC.) Plaintiff does not oppose the School District's motion to dismiss the § 1983 claim against the School District. As such, the court dismisses the sixth cause of action against the School District with prejudice.

### C. Immunity under Cal. Gov't Code §§ 820.2, 822.2

Principal Dale argues that he is immune from liability under Cal. Gov't Code § 820.2 for his discretionary decisions regarding disciplinary action against Gordon. (Dale MTD at 7-8; School District MTD at 7.) Principal Dale also argues for immunity under § 822.2 for his alleged misrepresentation during a parent meeting in December 2018. (Dale MTD at 7-8; School District MTD at 7.) The School District argues that it is also immune under Cal. Gov't Code § 815.2(b) and § 818.8. (School District MTD at 7:9-14.)

Plaintiff argues that two alleged actions are "operational" and/or "ministerial" decisions not subject to immunity: (1) Principal Dale's decision to assign Vice Principal Hall, Director of Student Athletics, to head the investigation, (FAC ¶ 28), and (2) Principal Dale's alleged misrepresentation at a school meeting, (*id.* ¶ 45). (Opp. to School District's MTD at 4-13.) Further, Plaintiff argues that § 822.2 does not apply to Principal Dale's misrepresentation because it does not involve the common law tort of deceit or interference with financial or commercial interests. (Opp. to Dale MTD at 11:1-4.)

Cal. Gov't Code § 820.2 provides:

> Except as otherwise provided by statute, a public employee is
> not liable for an injury resulting from his act or omission
> where the act or omission was the result of the exercise of the
> discretion vested in him, whether or not such discretion be
> abused.

Cal. Gov't Code § 820.2.  Courts have concluded that disciplinary decisions in the school context are discretionary decisions subject to immunity under § 820.2 because the decision to discipline entails "the resolution of policy considerations . . . ."  *Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal. App. 4th 1352, 1361 (2003); *see also*, *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997) ("Decisions by a school principal or superintendent to impose discipline on students and conduct investigations of complaints necessarily require the exercise of judgment or choice, and accordingly are discretionary, rather than ministerial, acts.").

Principal Dale is immune from liability for the alleged failure to remove Gordon from the wrestling team or from the school, or for its decision to assign Ms. Hall to the investigation because these decisions were discretionary decisions involving policy considerations.  Because Principal Dale cannot be held liable for these decisions, the School District also cannot be held liable.  *See* Cal. Gov't Code § 815.2(b) ("a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability").  However, Principal Dale's alleged misrepresentation during a parent meeting was not a discretionary decision involving policy considerations, therefore, Principal Dale is not immune from potential liability for this action.

Principal Dale alternatively argues that he is immune from liability for misrepresentation under Cal. Gov't Code § 822.2.  Section 822.2 provides:

> A public employee acting in the scope of his employment is
> not liable for an injury caused by his misrepresentation,

12

1
2

whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice.

3
4

Cal. Gov't Code § 822.2.  Importantly, immunity under § 822.2 is limited to causes of

5

action that "are forms of the common law tort of deceit . . . and involve interferences with

6

financial or commercial interests." *Finch Aerospace Corp. v. City of San Diego*, 8 Cal. App.

7

5th 1248, 1252 (2017) (citations omitted).  "California law generally recognizes four forms

8

of deceit: intentional misrepresentation, negligent misrepresentation, concealment, and

9

failure to perform a promise." *Id.*  Principal Dale's alleged misrepresentation during a

10

parent meeting denying knowledge of rape victims on campus is not based on the

11

common law tort of deceit and does not involve interferences with financial or

12

commercial interests.  Therefore, § 822.2 is not a basis for immunity for Principle Dale.

13

Therefore, § 818.8 also does not provide immunity for the School District.  The issue of

14

whether the alleged misrepresentation supports Plaintiff's state law claims is an issue

15

discussed below.

16

Plaintiff's state law claims based on Principal Dale's discretionary decisions to not

17

remove Gordon from the wrestling team, to not remove Gordon from the school, and the

18

decision to assign the investigation to Ms. Hall are dismissed with prejudice.

19

**D. Timeliness of Plaintiff's State Law Claims**

20

The School District and Dale next argue that Plaintiff's tort claims are barred

21

because she did not file her Government Tort Claim within six months of the accrual date

22

of the causes of action.  (School District MTD at 8; Dale MTD at 9.)  Plaintiff asserts that

23

the IIED claim accrued on December 5, 2018, when Dale "lied about complaints made

24

about rapists at Mira Costa High School."  (Opp. to School District at 12:7-9.)

25

"Under the theory of continuous accrual, a series of wrongs or injuries may be

26

viewed as each triggering its own limitations period, such that a suit for relief may be

27

partially time-barred as to older events but timely as to those within the applicable

28

limitations period." *Orange Cty. Water Dist. v. Sabic Innovative Plastics US, LLC*, 14 Cal. App. 5th 343, 395 (2017), as modified on denial of reh'g (Aug. 25, 2017) (internal citations and quotations omitted).  Taking the allegations as true, Plaintiff alleges a series of wrong doings beginning in July 2018 and ending in approximately December 2018 when Dale made the alleged misrepresentation at the parent meeting.  (*See* FAC.)  Plaintiff filed her claim for damages with the school district on May 1, 2019.  (FAC ¶ 56.)  Therefore, the court concludes that Plaintiff filed her Government Tort Claim within six months of the last action in the series of wrongs and as such, Plaintiff's state causes of action are not barred.

### E.  Harassment in Educational Institution – Cal. Educ. Code § 220

As discussed above for Plaintiff's Title IX claim, Plaintiff's allegations of discrimination on the basis of sex are insufficient to state a claim under California Education Code § 220.  *See* Cal. Educ. Code § 220 ("No person shall be subjected to discrimination on the basis of disability, gender, . . . or ethnicity, . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance . . . .").  In any amendment, Plaintiff must plead sufficient facts to plausibly allege discrimination on the basis of sex—as opposed to discrimination based on Gordon's athletic status.  Plaintiff must also cite all statutory bases for its claim against the School District.

### F.  Unruh Act Claim – Cal. Civ. Code § 51

The School District next argues that Plaintiff has failed to sufficiently allege a claim under California's Unruh Act.  (School District MTD at 14.)  Plaintiff argues that the inadequate response to her complaints of sexual harassment sufficiently alleges a denial of "advantages, facilities, privileges or services," and that the response was on the basis of her sex.  (Opp. to School District MTD at 18:10-28.)  Plaintiff points to the following allegations as the basis for the Unruh Act Claim: (1) assigning the head of Student Athletics to conduct the investigation, (FAC ¶ 29); (2) giving Plaintiff a schedule

14

that "forced her into proximity with her rapist," (FAC ¶ 31); failing to discipline Gordon "despite information suggesting numerous other sexual assaults," (FAC ¶¶ 33, 40, 50); and (3) Dale's alleged misrepresentation during a parent meeting.  (Opp. to School District MTD at 18-19.)

Section 51 of the California Civil Code provides, in part: "All persons . . ., and no matter what their sex, race, color, religion, . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  To establish a claim under the Unruh Act, Plaintiff must plead that: "(1) [s]he was denied the full and equal accommodations,. . .; (2) [her sex or gender] was the motivating factor . . .; (3) defendants denied plaintiff full and equal accommodations, . . .; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm."  *Wilkins-Jones v. Cty. of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012).  An inadequate response to a student's complaints of sexual harassment may be a denial of full and equal accommodations.  *See, e.g., Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997).

As discussed in detail above, Plaintiff has not pled sufficient facts to plausibly allege discrimination on the basis of sex.  Plaintiff argues in her Opposition that the School District's inadequate response to her allegations of rape was motivated by her sex. However, the complaint fails to plead sufficient facts to infer motivation on the basis of sex.  Rather, the complaint centers on the School District's interest in protecting its "star athletes."  The court dismisses Plaintiff's fifth cause of action and grants Plaintiff leave to amend.

### G.  Intentional Infliction of Emotional Distress

The School District next argues that Plaintiff has failed to allege a statutory basis for the state law causes of action against it.  (School District MTD at 10-12.)  The School District also argues that Plaintiff's IIED claim fails because Plaintiff has not alleged

extreme and outrageous conduct on the part of the School District.  Principal Dale similarly argues that the IIED claim against him is insufficient because Plaintiff has not pled outrageous conduct.  (Dale MTD at 12-13.)

     As an initial matter, the court agrees that Plaintiff has failed to plead the statutory basis for her IIED claim against the School District.  *See* Cal. Gov't Code § 815.  As such, the court grants Plaintiff leave to amend her statutory basis against the School District.  Next, to state a claim for IIED Plaintiff must plead:

> "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . .[] Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."

*Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991) (quoting *Davidson v. City of Westminster* 32 Cal. 3d 197 (1982)).  The outrageous conduct must be "directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Id.* Plaintiff's allegation of outrageous conduct against Principal Dale is limited to the allegation that "Dale intended and acted with reckless disregard for the probability that [Plaintiff] would suffer severe emotional distress when he lied to parents at an open meeting stating that Mira Costa High School had no knowledge of complaints made about rapists among their students or victims thereof . . ." (FAC ¶ 109.)  This single allegation is insufficient to plausibly allege outrageous conduct.  Moreover, there are no allegations that Plaintiff was present at the December parent meeting, that Principal Dale was aware of Plaintiff's presence, or that Principal Dale directed the outrageous conduct at Plaintiff.

     The court grants Plaintiff leave to amend the seventh cause of action against Principal Dale and the School District.  Any amendment must provide sufficient facts to

plausibly allege outrageous conduct directed at Plaintiff or that occurred in Plaintiff's presence.

### H.  Negligence/Negligence per se

Plaintiff's negligence claim is similarly insufficient.  Plaintiff alleges that Principal Dale and the School District had a duty to report suspected child abuse under Cal. Pen. Code § 11166 and failed to report the abuse to the police department.  (FAC ¶¶ 114, 116.) Further, Plaintiff argues that, had Defendants reported the suspected child abuse, Gordon would have been apprehended, before the parent meeting and before Principal Dale's misrepresentation, "thereby preventing [Plaintiff's] emotional distress." (Opp. to School District at 17-18.

The court concludes that Plaintiff's negligence claims are speculative and do not rise to the level of plausibility.  Plaintiff alleges that when she reported the rape to the school in July, her mother informed the School District that Plaintiff had filed a police report, and gave the school the police report number.  (FAC ¶¶ 22, 23, 24, 27, 29.) Accordingly, law enforcement was already aware of the rape.  Moreover, Plaintiff fails to plausibly allege damages from Principal Dale's failure to report under the mandated reporter statute.  Plaintiff's allegations are insufficient to plead a cognizable negligence claim.  The court dismisses Plaintiff's eighth cause of action with leave to amend.  In any amendment, Plaintiff must also plead a statutory basis for liability against the School District.

### I.  Punitive Damages

The School District and Principal Dale contend that they cannot be held liable for punitive damages.  Public entities are exempt from punitive damages under Cal. Gov't Code § 818.  "Notwithstanding any other provision of law, a public entity is not liable for . . . damages imposed primarily for the sake of example and by way of punishing the defendant."  Cal. Gov't Code § 818.  Governmental entities are also immune from liability for punitive damages in § 1983 claims.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247,

271 (1981).  To the extent that Plaintiff seeks punitive damages against the School District, the court strikes the request.  As to Principal Dale, in his individual capacity, the court concludes that Plaintiff has not sufficiently pled "oppression, fraud, or malice."  *See* Cal. Civ. Code § 3294.  Because the court grants Plaintiff leave to amend her claims against Principal Dale, Plaintiff will have an opportunity to plead facts demonstrating oppression, fraud, or malice.

**IV. CONCLUSION**

The court dismisses the Fourth cause of action with prejudice.

The court dismisses the Second cause of action based on selective enforcement, erroneous outcome, and intentional discrimination with leave to amend.

The court dismisses the Third cause of action with leave to amend.

The court dismisses the Sixth cause of action against the School District with prejudice.  The court further dismisses the Sixth cause of action against Principal Dale with leave to amend.

The court dismisses the Fifth cause of action with leave to amend.

The court dismisses the Seventh cause of action with leave to amend.

The court dismisses the Eighth cause of action with leave to amend.

Any amended complaint must be filed no later than fourteen days from the date of this Order.

**IT IS SO ORDERED.**

Dated: May 19, 2020

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE