**O**

1

2

3

4

5

6

7

8

9

10                          UNITED STATES DISTRICT COURT

11                         CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13   JANE DOE 1, an individual | )   Case No.  19-cv-6962 DDP (RAOx) |
| 14                              Plaintiff, | )<br>)   **ORDER GRANTING DEFENDANTS** |
| 15         v. | )   **MANHATTAN BEACH UNIFIED** |
| 16   MANHATTAN BEACH UNIFIED | )   **SCHOOL DISTRICT'S AND BEN**<br>)   **DALE'S MOTIONS FOR SUMMARY** |
| 17   SCHOOL DISTRICT; TYLER GORDON; | )   **JUDGMENT** |
| 18   BEN DALE; and DOES 2-10, inclusive, | )<br>) |
| 19 | )   [Dkt. 146] |
| 20                              Defendants. | ) |
| 21 _____ | ) |

22

23          Presently before the court is Defendants Manhattan Beach Unified School

24   District's and Ben Dale's Motions for Summary Judgment.  (Dkt. 146-1, 146-2.)  Having

25   considered the submissions of the parties and heard oral argument, the court grants the

26   motions and adopts the following order.

27   ///

28   ///

1

## I. BACKGROUND

2

3    Plaintiff Jane Doe ("Plaintiff") brings this action against the Manhattan Beach

4    Unified School District ("School District"), Principal of Mira Costa High School, Ben Dale

5    ("Principal Dale"), and Tyler Gordon ("Gordon"). (*See* Dkt. 64, Second Amend. Compl.)

6    Mira Costa High School is a school within the School District. (*See id.* ¶ 1.) Plaintiff was a

7    Mira Costa High School student from 2017 to 2019 for her junior and senior years. (Dkt.

8    146-7, Ex. 500A, Plaintiff Depo. at 10:8-22.) Gordon was also a student at Mira Costa

9    High School during these relevant school years. (Dkt. 146-9, Ex. 501, Gordon Depo. at

10   25:19-22.) According to Plaintiff, in February of 2018, during her junior year, Gordon

11   raped her off-campus while at a friend's house where she was housesitting. (Plaintiff

12   Depo. at 33:6-12, 109:20-110:10.) Plaintiff's claims against the School District and

13   Principal Dale arise from the School District's and Principal Dale's response to Plaintiff's

14   report of the alleged rape. (*See* Compl.) The following is a brief summary of the events

15   that occurred after February 2018.

16       On July 4, 2018, Plaintiff reported the alleged rape to her mother. (Plaintiff Depo.

17   at 197:24-198:2.) Prior to this date, Plaintiff had not reported the incident to any other

18   adult. (*See id.*) On July 14, 2018, Plaintiff reported the alleged rape to the Manhattan

19   Beach Police Department. (Plaintiff Depo. at 178:7-17; 197:24-198:5.) On July 23, 2018,

20   Plaintiff met with the assigned detective, Detective Jennifer Leach ("Detective Leach").

21   (Plaintiff Depo. at 219:22-25.) According to Plaintiff's mother, Detective Leach and a

22   Manhattan Beach District Attorney recommended that Gordon be placed in a diversion

23   program, instead of criminal prosecution. (Dkt.146-10, Ex. 502, V.D. Depo. at 183:2-14.)

24   Plaintiff agreed to this recommendation and signed a "Complaint Refusal on Victim's

25   Request" form indicating that she did not wish to prosecute Gordon because of fear of

26   retribution. (Dkt. 150-23, Connor M. Karen Decl., Ex. 19.) Despite signing this form, it is

27   undisputed that Plaintiff was under the belief that the Manhattan Beach Police

28   Department was investigating. (Plaintiff Depo. at 281:13-16.)

2

On or about July 23 or 24, Plaintiff's mother called Mira Costa High School to speak to Principal Dale and report the alleged rape.  (Plaintiff Depo. at 221-222; V.D. Depo. at 193-194.)  Dale was out of the country at the time and instead, Dale's assistant Carol Meeks returned Plaintiff's mother's phone call.  (Dkt. 146-12, Ex. 504, Ben Dale Depo. at 88:9-13; V.D. Depo at 197:3-24.)  Thereafter, Vice Principal Stephanie Hall ("Vice Principal Hall") took the "lead" in responding to the report and assisting Plaintiff.  (V.D. Depo at 197.)  At this time, the School District did not investigate the alleged rape because the School District believed that law enforcement was investigating and that it could not interfere in that investigation, although the parties now agree that no police investigation occurred.  (Dkt. 146-14, Ex. 505, Hall Depo. at 30:18-31:15; Leach Depo. at 39:9-40:6.)

Despite not conducting an investigation at the time, School District staff held multiple meetings from August to December 2018, with Plaintiff's mother and at times, Plaintiff, to respond to Plaintiff's needs arising from the alleged rape.  (*See* Hall Depo.; V.D. Depo.; Plaintiff Depo.)  The various meetings that took place were to respond to Plaintiff's reports that she and Gordon were crossings paths, respond to Plaintiff's decline in attendance and grades, respond to social media posts regarding the alleged rape, and address Principal Dale's statements at a parent meeting.  (*See* Hall Depo.; V.D. Depo.; Plaintiff Depo.)  During some of these meetings, Plaintiff reported that Gordon would pass by her and by her classes and stare her down or make degrading or aggressive comments, though Plaintiff does not recall the precise words Gordon used or the number of times Gordon would pass by her or how often he would do so.  (Plaintiff Depo. at 327-333.)  The attendees of these meetings varied, but often involved Vice Principal Hall, Plaintiff's guidance counselor, and Plaintiff's learning center teacher LeAnn Slough ("Slough").  (*See* Hall Depo.; V.D. Depo.; Plaintiff Depo.)  The following is a summary of undisputed meetings and events that occurred during the relevant time period.

On August 10, Vice Principal Hall met with Plaintiff's father in person and with Plaintiff's mother on the phone.  (Dkt. 146-19, M.D.D. Depo at 73:15-17; V.D. Depo. at 208:6-17.)  During this meeting, Plaintiff's parents requested that Plaintiff and Gordon not cross paths during the school year, requested an investigation, and for Gordon to be removed from the wrestling team and from school.  (M.D.D. Depo. at 75:19-76:6.)  On August 17, Plaintiff and Plaintiff's mother met with Vice Principal Hall to receive Plaintiff's class schedule.  (V.D. Depo. at 210-212.)  On August 29, after school had begun, Plaintiff and her mother met with Vice Principal Hall, Plaintiff's counselor, and an administrator.  (V.D. Depo. at 225:9-22.)  Plaintiff reported that she was crossing paths with Gordon and requested a schedule change, which was granted.  (Plaintiff Depo. at 274-76.)  At this meeting, Vice Principal Hall offered to have a security escort Plaintiff on campus, but Plaintiff declined.  (Plaintiff Depo. at 277:3-10.)  Thereafter, the parties agree that Plaintiff requested one or more schedule changes and such requests were also granted.  (Plaintiff Depo. at 276:20-277:2.)

On September 26, Plaintiff's learning center teacher, Slough, emailed Plaintiff's mother to discuss Plaintiff's attendance.  (V.D. Depo. at 232-233.)  Slough attempted to schedule meetings with Plaintiff in late September and early October, but Plaintiff did not attend those meetings.  (V.D. Depo. at 237:9-18.)  On October 1 and 15, Slough again emailed Plaintiff's mother about Plaintiff's grades and to discuss Plaintiff's Individualized Education Plan.[1]  (Dkt. 146-11, Ex. 503, V.D. Depo., Ex. B.)  On October 25, Plaintiff, Plaintiff's mother, Vice Principal Hall, Slough, and another employee of the School District held a meeting in which Plaintiff was offered counseling services, an option to take classes off-campus, and an online learning option.  (V.D. Depo. at 103-109.)

---

[1] An Individualized Education Plan refers to additional services provided to special education students.  (Hall Depo. at 53:23-54:6.)  Plaintiff was on an Individualized Education Plan prior to 2018.  (*See* V.D. Depo. at 65:1-25.)

4

Plaintiff declined the alternative schooling options.  (V.D. Depo. at 104:13-108:18.)  Plaintiff's mother instead requested that Plaintiff be permitted to take classes at a private school, but the School District denied that request.  (Hall Depo. at 72:25-73:8; V.D. Depo at 109:25, 116:14-16, 131:1-3.)  At this meeting, Plaintiff's schedule was again changed due to her reports of continuing to cross paths with Gordon.  (V.D. Depo. at 121-130.)

On or about November 28, after a social media post on NextDoor discussing sexual assaults at Mira Costa High School, Principal Dale decided to initiate a preliminary investigation into the allegations made on the social media post.  (Dale Decl. ¶ 4; Dale Depo. at 55-60.)  The preliminary investigation was not to investigate Plaintiff's report of the alleged rape.  (Dale Depo. at 55-60.)  However, in or around the same time, Principal Dale contacted Detective Leach to obtain clearance to investigate Plaintiff's report.  (Dale Depo. at 55:23-56:8,133:8-134:6.)  Shortly after, prior to December 3, the School District, through District employee Megan Locklear, initiated a Title IX investigation.  (Dale Depo. at 61:10-20.)

On December 3, Locklear and Principal Dale met with Gordon and Gordon's parents and instructed Gordon to stay off social media, gave Gordon routes of travel on campus, and was instructed not to pass by Plaintiff or interact directly or directly with Plaintiff.  (Gordon Depo., at pp. 263:1-264:8, 264:17-265:23.)  On December 4, Plaintiff and Plaintiff's mother attended a scheduled meeting regarding Plaintiff's Individualized Education Plan.  (V.D. Depo. at 131:23-25.)  Also on December 4, Plaintiff informed Principal Dale that she was crossing paths with Gordon and that he was saying things to her in passing.  (Plaintiff's Depo. 331:11-332.)  After December 4, Plaintiff did not see Gordon at lunch or at any time after lunch.  (Plaintiff Depo. at 289:12-21.)  However, according to Plaintiff, Plaintiff continued to see Gordon during the first part of the day and Gordon continued to stare her down and walk by Plaintiff's class.  (Plaintiff Depo. at 309:7-22.)

5

On December 5, Principal Dale met with Plaintiff and Plaintiff's mother in response to Principal Dale's comments to parents during a monthly parent meeting in which Principal Dale initially denied the allegations made in the NextDoor post. (Dale Decl. ¶ 5; V.D. Depo. at 382:20-21; Dale Depo. at 167:10-12.) Plaintiff and Plaintiff's mother requested, amongst other things, that Principal Dale correct his statements made at the parent meeting, apologize to Plaintiff, and for Gordon to be removed from campus, or at a minimum, removed from the wrestling team. (V.D. Depo. at 280:11-281:21.) On December 10, Principal Dale again met with Gordon and instructed him to leave campus before lunch, follow a specific walking path which was outlined on a map, and to not attend a club which Plaintiff sometimes attended. (Dale Depo., at pp. 179:1-7, 179:17-181:4, Exhibit 36; Gordon Depo. at 265:24-267.)

On December 21, Locklear met with Plaintiff in connection with the Title IX investigation; Plaintiff informed Locklear that Gordon was still passing by her and making comments. (Plaintiff Depo. at 332:14-333.) Plaintiff does not recall Locklear's response. (Plaintiff Depo. at 332.) On February 8, 2019, Locklear completed a "Report Regarding Title IX Investigation" to the School District's superintendent in which she concluded that Mira Costa High School had not violated Title IX. (Dkt. 150-15, Ex. 15.) During the second semester of senior year, Plaintiff did not request any additional supportive measures from Principal Dale or Vice Principal Hall. (Dale Decl. ¶ 9.) However, Plaintiff continued to receive support from her counselor and Slough. (Hall Depo. at 65:6-25.)

Plaintiff's claims against the School District are based on the Title IX theory of deliberate indifference of student-on-student harassment and on the theory that the School District discriminated against Plaintiff on the basis of sex by failing to initiate an investigation into the alleged rape and in conducting its Title IX investigation. According to Plaintiff, the School District's response to the report of the alleged rape was clearly unreasonable and the School District conducted a sham investigation. Plaintiff's Section

1983 claim against Dale is based on deliberate indifference to sexual harassment motivated by gender bias.

The School District and Dale presently move for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

7

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly.  *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found."  *Id.*

**III. DISCUSSION**

   **A.  Title IX: (Violation of 20 U.S.C. § 1681 *et seq.*) against the School District**

"Title IX provides that '[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 n.5 (9th Cir. 2019) (quoting 20 U.S.C. § 1681(a)).  "Title IX 'encompass[es] diverse forms of intentional sex discrimination.'"  *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020) (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005)).   Common theories of intentional discrimination have often been referred to as deliberate indifference to student-on-harassment, erroneous outcome, and selective enforcement theories.  *See Austin*, 925 F.3d at 1138-39.  However, in *Schwake*, the Ninth Circuit held that, rather than use doctrinal tests to evaluate Title IX claims, the Court would instead use the simpler standard—"whether . . . the [school] discriminated against the plaintiff on the basis of sex." *Schwake*, 967 F.3d at 946 (internal quotations and citations omitted).  While the court recognizes that these doctrinal tests have not been adopted by the Ninth Circuit, the court structures its discussion below based on Plaintiff's theories set forth in the Second Amended Complaint and the parties' arguments set forth in the briefing.

                    *1.  Deliberate Indifference to Student-on-Student Harassment*

"[S]tudent-on-student sexual harassment, if sufficiently severe, can [ ] rise to the level of discrimination actionable under the statute."  *Davis Next Friend LaShonda D. v.*

*Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999).  To succeed on a Title IX claim on the basis of student-on-student harassment, a plaintiff must show that the school was "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650; *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th Cir. 2000).  A plaintiff must also show that the school had "control over the alleged harassment." *Davis*, 526 U.S. at 644. Importantly, deliberate indifference is a higher standard than negligence.  *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) ( noting that the "record fail[ed] to demonstrate that the delay was more than negligent, lazy, or careless.").  "Deliberate indifference occurs only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Reese*, 208 F.3d at 739 (internal quotations omitted).

Plaintiff contends that she experienced student-on-student harassment when she encountered Gordon, her alleged rapist, on campus after she reported the rape to the School District in July 2018.  (Dkt. 150, Opp. to School District's MSJ.)  There is no dispute that the School District had control over Gordon and the Mira Costa High School setting in which the alleged harassment occurred.  For purposes of this motion, the court assumes, without deciding, that there is sufficient evidence on which a jury could conclude that the instances in which Plaintiff encountered Gordon were severe, pervasive, and objectively offensive such as to have deprived Plaintiff of access to the benefits of education at Mira Costa High.  Nonetheless, Defendant has set forth evidence that the School District responded to Plaintiff's reports of continuing to encounter Gordon by changing her class schedule multiple times, (Plaintiff Depo. at 274-77:2), offering Plaintiff alternative schooling such as online classes and off-campus options, (V.D. Depo. at 103-109), offering to have her escorted on-campus by a police officer, (Plaintiff Depo. at 277:3-10), instructing Gordon to not speak to Plaintiff, limiting

9

Gordon's walking paths to avoid encounters with Plaintiff, and prohibiting Gordon from attending a school club, (Gordon Depo. at 263:1-264:8, 264:17-265:23). The School District offered other supportive measures as well, such as consistent follow-up by Plaintiff's counselor and Plaintiff's Learning Center Teacher, Slough.

The undisputed evidence shows that the School District's response to Plaintiff's reports changed over time, from changing Plaintiff's class schedule, to offering alternative schooling options, to instructing Gordon to utilize a specific walking path. Plaintiff has not set forth evidence tending to show that these actions were clearly unreasonable under the circumstances. *See Garcia ex rel. Marin v. Clovis Unified School Dist.*, 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009) (noting that "courts have indicated that continuing to utilize the same response after it has been shown to be ineffective, or not responding at all, or utilizing a minimalist response may demonstrate deliberate indifference, a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline." (internal quotations and citations omitted)).

Plaintiff appears to contend that the School District's failure to promptly investigate the rape and failure to remove Gordon from campus, are evidence that the School District's response was clearly unreasonable. However, Plaintiff does not dispute that the School District, like Plaintiff and her parents, was under the impression that the police were investigating. (Hall Depo. at 30:18-31:15; Plaintiff Depo. at 281:13-16.) That the School District decided to not commence its own investigation to not interfere with what was then believed to be an ongoing police investigation, is not evidence of a clearly unreasonable response in light of evidence that the School District continuously worked with Plaintiff and her mother to respond to Plaintiff's reports of her encounters with Gordon on campus. *See Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (holding that evidence of delay contravening School policy was not sufficient to demonstrate that the delay was "more than negligent, lazy, or careless" where additional

considerations were taken into account).  Additionally, as the Ninth Circuit has noted, Plaintiff is not entitled to the precise remedy she seeks.  *Oden*, 440 F.3d at 1089 ("An aggrieved party is not entitled to the precise remedy that he or she would prefer."); *see also Garcia ex rel. Marin v. Clovis Unified School Dist.*, 627 F. Supp. 2d 1187, 1196 (E.D. Cal. 2009) (noting that "courts have indicated that continuing to utilize the same response after it has been shown to be ineffective, or not responding at all, or utilizing a minimalist response may demonstrate deliberate indifference, a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline." (internal quotations and citations omitted)).

The court concludes that Plaintiff has not set forth sufficient evidence demonstrating that the School District's measures in response to the known circumstances were clearly unreasonable in light of the known circumstances.  On this record, summary judgment in favor of the School District is appropriate.

### 2. Erroneous Outcome

In essence, a Title IX claim proceeding under an "erroneous outcome" theory asserts that the outcome of a proceeding was flawed due to plaintiff's sex.  *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019).  Plaintiff asserts that the School District's failure to initiate an investigation into the alleged rape, the Title IX report "riddled with falsehoods," and patterns of mishandled incidents of male-on female student sexual misconduct demonstrates that the School District was motivated by gender bias.  (Opp. at 23-24.)  However, here too, Plaintiff has not put forth evidence to demonstrate that the School District's course of action, from the time that Plaintiff reported the alleged rape to the issuance of the Title IX report, in light of the School District's undisputed evidence, was motivated by gender discrimination.  *See Oden*, 440 F.3d at 1089 (finding that a delay in forming a committee and holding a hearing in contravention of a school policy is insufficient to demonstrate more than negligence).  Additionally, as required for a Title

11

IX claim, Plaintiff has not put forth evidence linking the Report Regarding Title IX Investigation to discrimination on the basis of sex.  *See Austin*, 925 F.3d at 1138.

On this record, summary judgment in favor of the School District is appropriate.

### B.  Deprivation of Equal Protection Rights (Violation of 42 U.S.C. § 1983) against Principal Ben Dale

"To establish a § 1983 equal protection violation, the plaintiffs must show that the defendants, acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional."  *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).  A plaintiff can demonstrate an unconstitutional motive by setting forth facts that show "defendants intentionally discriminated or acted with deliberate indifference."  *Id.* at 1135.  "Deliberate indifference is found if the school administrator responds to known peer harassment in a manner that is [ ]clearly unreasonable."  *Id.* (internal quotations omitted) (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649 (1999)).  "An individual defendant is not liable on a civil rights claim unless the facts establish that particular defendant's personal involvement in some constitutional deprivation or a causal connection between that defendant's wrongful conduct and the constitutional deprivation the plaintiff alleged."  *Gates v. Jackson*, No. CV 14-904 DDP(JC), 2014 WL 12851952, at *5 (C.D. Cal. Aug. 7, 2014).

For the reasons set forth above, Plaintiff has also failed to set forth sufficient evidence on which a jury could conclude that Principal Dale responded with deliberate indifference.  Principal Dale has submitted evidence that he was out of the country at the time of Plaintiff's initial report.  (Ben Dale Depo. at 88:9-13; V.D. Depo at 197:3-24.)  And, although Principal Dale did not personally participate in the various meetings with Plaintiff and Plaintiff's mother, he was aware that Vice Principal Hall was responding to Plaintiff's needs.  Plaintiff has not explained how Principal Dale's failure to meet with Plaintiff promptly or assigning Vice Principal Hall, if this was Principal's Dales decision,

1   demonstrates deliberate indifference.  Plaintiff has not linked any action or failure to act

2   to discrimination.

3            The court grants summary judgment in favor of Principal Dale.

4            **C.  State Law Causes of Action**

5            Plaintiff does not appear to dispute that the state law causes of action should be

6   dismissed on summary judgment.  (*See* Opp.)  Plaintiff asserts two state law causes of

7   action against MBUSD, violation of Cal. Educ. Code § 220 and violation of Cal. Civ. Code

8   51(b).  "The elements for demonstrating a claim under Section 220 mirror those for a

9   claim under Title IX. . . . A plaintiff must show (1) he or she suffered severe, pervasive

10  and offensive harassment that effectively deprived the plaintiff of the right of equal

11  access to educational benefits and opportunities; (2) the school had actual knowledge of

12  the harassment; and (3) the school responded with deliberate indifference. *Walsh v.*

13  *Tehachapi Unified Sch. Dist.*, 827 F. Supp. 2d 1107, 1124 (E.D. Cal. 2011) (citing *Donovan v.*

14  *Poway Unified Sch. Dist.*, 167 Cal.App.4th 567, 603-09, (2008)).

15           Section 51 of the California Civil Code ("Unruh Act") provides, in part: "All

16  persons . . ., and no matter what their sex, race, color, religion, . . . are entitled to the full

17  and equal accommodations, advantages, facilities, privileges, or services in all business

18  establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  To establish a claim

19  under the Unruh Act, Plaintiff must show that: "(1) [s]he was denied the full and equal

20  accommodations,. . .; (2) [her sex or gender] was the motivating factor . . .; (3) defendants

21  denied plaintiff full and equal accommodations, . . .; and (4) defendants' wrongful

22  conduct caused plaintiff to suffer injury, damage, loss or harm." *Wilkins-Jones v. Cty. of*

23  *Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012).  An inadequate response to a

24  student's complaints of sexual harassment may be a denial of full and equal

25  accommodations. *See, e.g., Nicole M. By & Through Jacqueline M. v. Martinez Unified Sch.*

26  *Dist.*, 964 F. Supp. 1369, 1389 (N.D. Cal. 1997).

27

28                                              13

Because Section 220 mirrors Title IX and, as discussed above, there is no triable issue of fact on Plaintiff's Title IX cause of action, the court grants summary judgment on the Section 220 claim.  The court also grants summary judgment on Plaintiff's Unruh Act claim because California recently determined that "public school districts are not business establishments under the Unruh Act."  *Brennon B. v. Superior Court of Contra Costa Cty.*, 57 Cal. App. 5th 367 (2020).

## IV. CONCLUSION

The court grants Defendant Manhattan Beach Unified School District's and Ben Dale's Motions for Summary Judgment.  Plaintiff's claims against Defendant the Manhattan Beach Unified School District and Ben Dale are hereby dismissed.


**IT IS SO ORDERED.**


Dated:    August 31, 2021


_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

14